# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| CLOUD BYTE LLC,<br><br>                                *Plaintiff*,<br><br>   v.<br><br>DELL INC., and DELL TECHNOLOGIES, INC.,<br><br>                              *Defendants*. | Civil Action No. 2:24-cv-00637-JRG |

**CLOUD BYTE LLC'S REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page(s)**

I. "MEANS FOR REBUILDING DATA ON THE REPLACEMENT DISK DRIVE FROM THE BACKUP STORAGE DEVICE THROUGH THE REBUILD MODULE WHILE SIMULTANEOUSLY PROVIDING NORMAL READ/WRITE ACCESS TO THE DISK DRIVES THAT HAVE NOT FAILED THROUGH THE RAID MODULE" ('544 PATENT, CLAIM 1) ...................................... 1

II. "BACKUP STORAGE DEVICE" ('544 PATENT, CLAIMS 1 & 13) ............................... 2

III. "DETERMINE THAT AN ABNORMALITY IS OCCURRING" ('632 PATENT, CLAIM 1) ........................................................................................................................ 4

IV. "CLOSE TO THE FRONT FACE" ('265 PATENT, CLAIM 1) ....................................... 6

V. "A DECLINATION INDEX VALUE CALCULATION UNIT" ('320 PATENT, CLAIM 1) ........................................................................................................................ 8

VI. "STANDBY SYSTEM" ('273 PATENT, CLAIMS 1, 8, 18, 19) ....................................... 9

i

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Abbott Diabetes Care Inc. v. Dexcom, Inc.*,
  IPR2022-00909, Petition at 10-11, n.2 (Apr. 21, 2022) ............................................................. 5, 6

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008) ....................................................................................................... 1

*Astute Tech., LLC v. Learners Dig. Int'l LLC*,
  No. 2:12-CV-689-JRG, 2014 WL 1385191 (E.D. Tex. Apr. 2, 2014) ........................................ 8

*Baran v. Med. Device Techs., Inc.*,
  616 F.3d 1309 (Fed. Cir. 2010) ....................................................................................................... 3

*Becton, Dickinson & Co. v. Tyco Healthcare Grp.*,
  616 F.3d 1249 (Fed. Cir. 2010) ....................................................................................................... 3

*Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*,
  998 F.3d 1320 (Fed. Cir. 2021) ....................................................................................................... 7

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
  157 F.3d 1340 (Fed. Cir. 1998) ....................................................................................................... 2

*Cont'l Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) ......................................................................................................... 3

*Deere & Co. v. Bush Hog,*
  703 F.3d 1349 (Fed. Cir. 2012) ....................................................................................................... 7

*e.Digital Corp. v. Futurewei Techs., Inc.*,
  772 F.3d 723 (Fed. Cir. 2014) ......................................................................................................... 3

*Finalrod IP, LLC v. Endurance Lift Sols., Inc.*,
  No. 22-CV-00189-JRG-RSP, 2021 WL 2187980 (E.D. Tex. May 28, 2021) ........................... 4

*Garrity Power Servs. LLC v. Samsung Elecs. Co.*,
  No. 2:20-CV-00269-JRG, 2021 WL 3403747 (E.D. Tex. Aug. 4, 2021) ................................... 6

*GE Lighting Sols., LLC v. Lights of Am., Inc.*,
  663 F. App'x 938 (Fed. Cir. 2016) ................................................................................................. 7

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
  349 F.3d 1373 (Fed. Cir. 2003) ....................................................................................................... 4

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008) ...................................................................................... 7

*Harris Corp. v. Ericsson Inc.*,
    417 F.3d 1241 (Fed. Cir. 2005) (Opp. 2) ........................................................................ 2

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
    527 F.3d 1379 (Fed. Cir. 2008) ...................................................................................... 3

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
    732 F.3d 1376 (Fed. Cir. 2013) ...................................................................................... 1

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533 (Fed. Cir. 1991) ...................................................................................... 1

*Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*,
    800 F.3d 1366 (Fed. Cir. 2015) ...................................................................................... 2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ........................................................................................................ 6

*Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co. Matal*,
    868 F.3d 1013 (Fed. Cir. 2017) ...................................................................................... 6

*NorthPeak Wireless, LLC v. 3Com Corp.*,
    674 F. App'x 982 (Fed. Cir. 2016) ................................................................................. 8

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2008) ................................................................................. 4, 5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ...................................................................................... 3

*Promptu Sys. Corp. v. Comcast Corp.*,
    92 F.4th 1372 (Fed. Cir. 2024) .................................................................................. 4, 5

*Saffran v. Johnson & Johnson*,
    712 F.3d 549 (Fed. Cir. 2013) ........................................................................................ 1

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) .................................................................................... 10

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    983 F.3d 1367 (Fed. Cir. 2021) ...................................................................................... 3

*Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ...................................................................................... 7

*Springs Window Fashions L.P. v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003) ...................................................................................................8

*Tech. Prop. Ltd. LLC v. Huawei Techs. Co.*,
    849 F.3d 1349 (Fed. Cir. 2017) .................................................................................................8

*Thorner v. Sony Comput. Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ...............................................................................................10

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
    529 F.3d 1364 (Fed. Cir. 2008) .................................................................................................3

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) ...............................................................................................10

*TomTom, Inc. v. Adolph*,
    790 F.3d 1315 (Fed. Cir. 2015) .................................................................................................3

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
    853 F.3d 1272 (Fed. Cir. 2017) .................................................................................................7

# NOTES ON CITATIONS

- **Abbreviations:**

    o   Plaintiff Cloud Byte LLC is referred to herein as "Cloud Byte."

    o   Defendants Dell Inc. and Dell Technologies, Inc. are referred to herein as "Dell."

    o   U.S. Patent No. 7,739,544 is referred to herein as "the '544 Patent." The '544 Patent can be found at Exhibit B to the Declaration of Jonathan Tse, filed with Cloud Byte's Opening Brief.

    o   U.S. Patent No. 9,482,632 is referred to herein as "the '632 Patent." The '632 Patent can be found at Exhibit C to the Declaration of Jonathan Tse, filed with Cloud Byte's Opening Brief.

    o   U.S. Patent No. 9,629,265 is referred to herein as "the '265 Patent." The '265 Patent can be found at Exhibit D to the Declaration of Jonathan Tse, filed with Cloud Byte's Opening Brief.

    o   U.S. Patent No. 9,651,320 is referred to herein as "the '320 Patent." The '320 Patent can be found at Exhibit H to the Declaration of Jonathan Tse, filed with Cloud Byte's Opening Brief.

    o   U.S. Patent No. 10,628,273 is referred to herein as "the '273 Patent." The '273 Patent can be found at Exhibit J to the Declaration of Jonathan Tse, filed with Cloud Byte's Opening Brief.

    o   U.S. Patent No. 7,382,613 is referred to herein as "Vinson." Vinson is referenced in Exhibit F to the Declaration of Jonathan Tse, filed with Cloud Byte's Opening Brief. Vinson is also referenced in Exhibit 7, filed with Dell's Responsive Claim Construction Brief.

    o   JP05-100063 is referred to herein as "Takeshi." Takeshi is discussed in the prosecution history of the '320 Patent, in Exhibit 10, filed with Dell's Responsive Claim Construction Brief.

    o   A person of ordinary skill in the art is referred to herein as a "POSITA."

    o   The Declaration of Dr. Paul S. Min Regarding the Construction of Disputed Claim Terms from U.S. Patent No. 9,629,265, dated July 25, 2025, is referred to herein as "Min Decl." and can be found at Exhibit A to the Declaration of Jonathan Tse, filed with Cloud Byte's Opening Brief.

    o   The Declaration of Dr. William R. Michalson Concerning Claim Construction of U.S. Patent No. 9,629,265, dated July 25, 2025, and can be found at Exhibit F to the Declaration of Jonathan Tse, filed with Cloud Byte's Opening Brief.

    o   The "System Behavior" article on the ScienceDirect website, available at https://www.sciencedirect.com/topics/computer-science/system-behavior, is

referred to herein as "ScienceDirect Article," and can be found at Exhibit O to the Declaration of Jonathan Tse, filed with Cloud Byte's Reply Claim Construction Brief.

- o Plaintiff Cloud Byte's Opening Claim Construction Brief, dated September 5, 2025, filed at Dkt. 120, is referred to herein as "Br.".

- o Defendant Dell's Responsive Claim Construction Brief, dated September 19, 2025, filed at Dkt. 124, is referred to herein as "Opp.".

Dell's constructions contain fundamental flaws: they inject words and concepts absent from the specifications, contradict the intrinsic evidence, and would improperly exclude embodiments expressly disclosed in the patents-in-suit. Dell fails to distinguish controlling Federal Circuit precedent, mischaracterizes the prosecution histories, and reveals the self-serving nature of its positions—construing terms broadly for invalidity in parallel IPR proceedings while seeking narrow constructions for infringement here. The Court should reject Dell's constructions and adopt Cloud Byte's constructions, which flow directly from the claim language, find support in the specifications, and align with how a person of ordinary skill in the art would understand these terms.

### I.     "means for rebuilding data on the replacement disk drive from the backup storage device through the rebuild module while simultaneously providing normal read/write access to the disk drives that have not failed through the RAID module" ('544 Patent, Claim 1)

The central dispute is whether "rebuilding data . . ." requires a corresponding structure. It does not. Dell concedes three critical points: (1) the disk access bus/switch is not a general-purpose processor or computer programmed to carry out any algorithm; (2) incorporating of step S46 (modify map) from the dependent claims into the construction for independent claim 1 would exclude other ways of rebuilding data[1]; and (3) the specification uses permissive language with respect to the modify map.[2] Br. 6-8. Dell also fails to distinguish Cloud Byte's controlling caselaw.

Dell contends that rebuild module 17 and its associated algorithm are necessary

---

[1]  Dell's cases, *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) and *Saffran v. Johnson & Johnson*, 712 F.3d 549, 563 (Fed. Cir. 2013), simply stand for the proposition that patentees cannot use claim differentiation to broaden a means-plus-function limitation beyond what is disclosed in the specification, which is not at issue here.

[2]  Neither *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1379 (Fed. Cir. 2013) nor *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008), detract from the bedrock claim construction rule that permissive disclosures cannot impose mandatory structural requirements.

corresponding structures because they perform "rebuilding data on the replacement disk." Opp. 2. But that misconstrues the recited function. The "while simultaneously providing" clause is the function that relates to "simultaneously providing" normal read/write access to the drives that have not failed "*while*" the "rebuilding data" function occurs. Ex. B at 9:45–47.[3] The "rebuilding of data" has already occurred in the immediately preceding claim element. *Id.* cl. 1 ("a rebuild module for performing rebuilding of data . . . ."). The specification distinguishes the rebuild module's function of rebuilding data itself from the means for simultaneously performing rebuilding without blocking normal access, accomplished using only disk access bus/switch 18. Br. 4–5 (citing Ex. B at 3:33–42). Dell's construction violates the established principle that "it is incorrect to construe claims contrary to the specification, and it is incorrect to construe terms in means-plus-function form as disembodied from the structure in the specification." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1361 (Fed. Cir. 1998).[4]

## II.     "backup storage device" ('544 Patent, Claims 1 & 13)

Dell's attempt to rewrite the claim term "backup storage device" contradicts the intrinsic record, the claims themselves, and well-established Federal Circuit precedent. Dell does not dispute that the specification never mentions the phrases "primary," "copy," or "secondary," yet fails to explain why its construction*s* do not improperly introduce confusion and ambiguity. Br. 10.

Dell's position fails for multiple reasons. *First*, Dell challenges Cloud Byte's cited support in the specification—"[t]he backup storage 30 may be *of course* configured to be the disk array" (Opp. 8)—but ignores that the plain claim language encompasses that embodiment. Ex. B, cls. 1,

---

[3]  All emphases are added unless otherwise noted.

[4]  Since the recited function is not focused on the actual rebuilding of data, Dell's citation to *Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1374 (Fed. Cir. 2015) and *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1249 (Fed. Cir. 2005) (Opp. 2) are inapposite for the same reasons.

2

13. Dependent claim 12 requires only that "the rebuild module and the RAID module"—not the "backup storage device" and "disk array"—"are separate from each other." *Id.*, cl. 12.[5]

*Second*, Dell cites the applicant's prosecution statements as distinguishing prior art involving a "traditional disk array" (Opp. 8), but those statements merely emphasize improved rebuilding speed and performance by leveraging the backup storage device, consistent with the term's plain meaning. Ex. 1 at 61–62. Dell has not demonstrated the "clear and unmistakable" disclaimer required by the Federal Circuit to depart from plain meaning. *See Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019).

*Third*, Dell's reliance on extrinsic evidence (Opp. 8) cannot override the clear intrinsic record undermining Dell's construction. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005); Ex. B at 4:48–49.

*Finally*, Dell fails to meaningfully distinguish *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1328–29 (Fed. Cir. 2015), or explain why its construction would not improperly exclude an embodiment disclosed in the specification. Dell's cited case, *e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 726–27 (Fed. Cir. 2014), merely indicates that courts should undertake a "new claim construction inquiry" for unrelated patents—it does not suggest courts cannot be guided by the plain and ordinary meaning of identical and well-known terms across patents.

---

[5] All of Dell's cases are inapposite. Unlike in *Helmsderfer v. Bobrick Washroom Equip., Inc.*, the claims at issue are not "directed to . . . different disclosed embodiments." 527 F.3d 1379, 1383 (Fed. Cir. 2008). Likewise, the court in *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.* declined "to construe the claim term to encompass the alternative embodiment," affirming that the ***claim language*** governs. 529 F.3d 1364, 1373 (Fed. Cir. 2008). Dell relies on *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.,* which actually supports Cloud Byte, as "the language of the *claim* itself makes clear" which party's construction is correct. 983 F.3d 1367, 1378–79 (Fed. Cir. 2021). Similar reasoning applies to *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, where the Federal Circuit rejected a construction that "renders the asserted ***claims nonsensical***." 616 F.3d 1249, 1255 (Fed. Cir. 2010). And Dell quotes *Baran v. Med. Device Techs., Inc.* in response to an argument that Cloud Byte never made. 616 F.3d 1309, 1316 (Fed. Cir. 2010).

Recognizing its construction's defects, Dell proposes an alternative: "device, apart from the disk array, for storing a backup copy of data on the disk array." Opp. 6. Dell again uses words absent from the specification—"apart" and "backup copy"—that inject ambiguity, and cites no intrinsic evidence supporting this new construction. Dell has not explained how this new construction would overcome the fatal deficiency of "interpret[ing] claim terms in a way that excludes embodiments disclosed in the specification." *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008). At most, Dell now appears to require physical separation between the "backup storage device" and "disk array," but fails to show that the applicant disavowed a "backup storage device" that is separate from the disk array.

### III.    "determine that an abnormality is occurring" ('632 Patent, Claim 1)

Dell's strained justification for its construction underscores its impropriety. Dell does not dispute that the specification consistently discloses abnormalities with respect to the "cooling function" but does not disclose "system behavior," much less what constitutes "expected" or "acceptable" behavior, as Dell's construction requires. Opp. 12–13. Such a construction would "create uncertainty as to the scope of the asserted claims." *Finalrod IP, LLC v. Endurance Lift Sols., Inc.*, No. 22-CV-00189-JRG-RSP, 2021 WL 2187980, at *8 (E.D. Tex. May 28, 2021); *see also Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) (rejecting construction that would render the term indefinite). Dell fails to distinguish Cloud Byte's controlling case law.

Dell mischaracterizes the "core dispute" for this term. The issue is not "whether the plaintiff should be permitted to ignore the express requirement of the determination of an 'abnormality' and stretch the claims to cover a system that uses the accused temperature sensors only as part of the normal operation of a fully functional system"—language that defies comprehension. Opp. 11; *Promptu Sys. Corp. v. Comcast Corp.*, 92 F.4th 1372, 1381 (Fed. Cir.

4

2024) (a claim construction "should help resolve, not add to, uncertainty"). Rather, the actual disputes are whether the "expected or acceptable system behavior" in Dell's construction finds support in the specification and whether it encompasses the cooling functions the specification discusses. They do not.

Computer system behavior generally refers to "how the system processes user inputs and generates appropriate output." Ex. O. Dell identifies no specification passages discussing abnormalities related to such system behavior. While Dell concedes that the claimed "abnormality" relates to the "cooling function" and asserts that "system behavior" means "cooling performance of the ICT equipment" "expected to keep the temperature within an estimated range," Dell expands this to associate "system behavior" with "load and intake-air conditions" or "temperature measurements and operational parameters." Opp. 12-15 (attempting to explain "expected behavior" as "allowable temperature"). But such conditions or parameters are simply the effect or by-product—in other words, proxies—of a running system and bear no relationship to whether the system's outputs are "expected" or "acceptable" based on the inputs. Indeed, a system may behave as "expected" or "acceptabl[y]" when CPU load is low, yet still encounter a cooling function abnormality, such as a clogging of the air filter as identified in the specification of the '632 Patent. Ex. C at 7:21–25. Dell's construction would improperly exclude this embodiment.[6] *Oatey*, 514 F.3d at 1276.

Finally, Dell does not dispute that it construes "abnormality" more broadly in the co-pending IPR proceeding—agreeing that the abnormality involves the cooling function (*i.e.*, a clogged dust filter) while seeking a narrower construction for infringement in this case.[7] This

---

[6] Although Dell argues that exceeding the temperature limit is simply an indicator of abnormality and not the abnormality itself, it is unclear what is the significance of that observation. Opp. 12.

[7] Dell's cases differ factually. In *Abbott Diabetes Care Inc. v. Dexcom, Inc.*, the petitioner

5

shifting, self-serving approach to claim construction should be rejected.

### IV.     "close to the front face" ('265 Patent, Claim 1)

Dell cannot meet its burden to demonstrate that "close to the front face" is indefinite. Dell does not dispute that the term "close to" is "ubiquitous in patent claims," nor does it distinguish Cloud Byte's caselaw. Br. 19–20. Dell further concedes that the Examiner, Dell's own expert (Dr. Himanshu Pokharna) in the parallel IPR proceeding, and Cloud Byte's expert (Dr. Paul Min) all understood the term's plain and ordinary meaning. Ex. G at 2, 6–8; Ex. E at 28, 67–68; Ex. A ¶¶ 29–38. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (a POSITA need only understand the scope of the claimed invention with "reasonable certainty"). These undisputed facts alone establish that this term is not indefinite.

Dell's arguments lack merit. ***First***, Dell erects a strawman by incorrectly framing the inquiry as to "how *close* the fans must be to the front face," which is not the test. Opp. 17 (emphasis in original). The examiner found the claim patentable over Vinson, which discloses rear-mounted fans, thereby defeating Dell's argument. Br. 20.

***Second***, Dell's prosecution history arguments are irrelevant and unpersuasive. The amendment containing this term was added to overcome the Lin reference, which simply disclosed fans "located inside the housing . . . ." Opp. 20–22; *id.* Ex. 7 at 59, 63–70. As a result, there was no need to clarify this term to the Examiner, who understood the term. Dell's cases are

---

*expressly applied* the same construction sought by the patentee in its claim construction brief filed *before* its IPR petition. IPR2022-00909, Petition at 10-11, n.2 (Apr. 21, 2022) ("Petitioner applies PO's interpretations…."). Like in *Garrity Power Servs. LLC v. Samsung Elecs. Co.*, the Court should also reject the unsupported, narrower construction that Dell seeks in litigation based on the same reasoning. No. 2:20-CV-00269-JRG, 2021 WL 3403747, at *11–13 (E.D. Tex. Aug. 4, 2021). In *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co. Matal*, the Court found it "need not construe the claim preambles here where the construction is not material to the obviousness dispute," which is not at issue here. 868 F.3d 1013, 1017 (Fed. Cir. 2017) (cleaned up).

6

distinguishable.[8]

***Third***, the functional guidance in the claim language itself provides the "objective boundaries" that a POSITA would understand with reasonable certainty, without rendering the term "superfluous."[9] Opp. 17-18. Indeed, the '265 Patent specification explains that "fans 42 cause cooling air to propagate from the front face F to the rear face B in the housing 41" and claim 1 requires "a plurality of fans which are arranged inside the housing close to the front face *so as to cause* cooling air to flow downstream in the longitudinal direction from the front face to the rear face of the housing." Ex. D at 6:55–57, cl. 1. Dell's sole counter-example (Vinson) actually shows that this term is not indefinite. Even Dell's expert, Dr. Michalson, does not argue that a POSITA would consider Vinson's rear-mounted fans to satisfy this term, nor does he explain how Vinson's fans mounted behind the rear of the chassis could reasonably "cause cooling air to flow *downstream*" from the fans "to the rear face of the housing." *See* Ex. F ¶¶ 35–42.

Dell effectively demands that objective boundaries for terms of degree must be expressly described in writing. Opp. 17–22. This is wrong as a matter of law. *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). Dell misstates the record (Opp. 22) and ignores that Cloud Byte ***did*** extensively dispute Dr. Michalson's characterization (Br. 19–21) and never "concede[d]" that the file history "did not provide guidance" as to the term's scope. Accordingly,

---

[8] Unlike in *GE Lighting Sols., LLC v. Lights of Am., Inc.*, 663 F. App'x 938, 941 (Fed. Cir. 2016) and *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1252–53 (Fed. Cir. 2008), there is no "unresolved ambiguity" because the intrinsic evidence and specification provide a clear functional boundary that a POSITA understands. Ex. A ¶¶ 31–35. Dell's attempt to distinguish *Deere & Co. v. Bush Hog* fails given that, like in *Deere*, the intrinsic evidence here provides sufficient guidance rendering this term definite. 703 F.3d 1349, 1359–60 (Fed. Cir. 2012).

[9] Dell's cases are inapposite, as Cloud Byte is not attempting to "rewrit[e]" the claims here and has not sought a construction that renders terms "superfluous." *Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1331 (Fed. Cir. 2021); *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017).

the Court should not find this term indefinite.

V.     "a declination index value calculation unit" ('320 Patent, Claim 1)

Dell's arguments create confusion rather than provide clarity. Dell does not dispute that its construction merely re-arranges the claim words while adding the unsupported word "dedicated."[10] While Dell acknowledges that the declination index value calculation unit is not "dedicated" to performing calculations and can perform other functions, Dell attempts to limit the types of calculations it may perform to only "a decrease in temperature" to the exclusion of increases in temperature, or both. Opp. 24-26. This newly-minted interpretation of its own construction is unsupported and inconsistent with a POSITA's understanding of the plain claim language.

Dell's revised construction fails for several reasons. *First*, Dell relies heavily on prosecution statements, but critically fails to demonstrate that any constitute disclaimer. Opp. 25. As Dell notes, the applicant consistently argued that Takeshi lacked the "calculating a degree of declination" limitation. *Id.* at 24. Although the examiner appeared initially to disagree, nowhere did the applicant disclaim any claim scope. Ex. 10 at 57–65, 75–82, 94–99. Dell cites no supporting caselaw finding disclaimer under similar circumstances.[11] Opp. 25.

*Second*, Dell's reliance on certain dependent claims fails to support disavowal and

---

[10] *Astute Tech., LLC v. Learners Dig. Int'l LLC*, No. 2:12-CV-689-JRG, 2014 WL 1385191, at *19 (E.D. Tex. Apr. 2, 2014) (construction that "rearranges words from the disputed term," is "not [] helpful" and instead "supports the notion that the disputed term has a well understood meaning").

[11] Dell's caselaw is readily distinguishable, as disclaimers were found based on amendments to distinguish prior art or statements unnecessary to overcome prior art, none of which are applicable here. *Springs Window Fashions L.P. v. Novo Indus., L.P.*, 323 F.3d 989, 994-95 (Fed. Cir. 2003); *Tech. Prop. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1358-59 (Fed. Cir. 2017). And Dell mischaracterizes *NorthPeak Wireless, LLC v. 3Com Corp.*, which actually found the "intrinsic evidence fully support[ed]" the construction (not so here) and any broader scope had been "unambiguously disclaimed" (which Dell failed to and cannot show). 674 F. App'x 982, 987 (Fed. Cir. 2016).

8

contradicts dependent claims 4 and 6, which do not limit this term to calculating only temperature decreases. Ex. H, cls. 4 ("... the index value is a difference between a highest value of the component temperature of the electronic component in a past certain period and a current component temperature."), 6 ("... if the index value is not less than a predetermined threshold, the control unit stops the cooling fan.").

***Third***, Dell identifies nothing in the specification that meets the high bar for disavowal. Opp. 24. Dell's only quoted passage merely paraphrases the claim limitation containing the disputed term. *Id.* Taken to its logical conclusion, Dell's position would permit calculation of only temperature decreases while preventing calculation of temperature increases—an untenable result.

***Finally***, as with other constructions, Dell's justification for relying on Cloud Byte's broader construction in a co-pending IPR proceeding, and narrower construction for infringement here, is self-serving and should be rejected. *See supra*, § III.

### VI. "standby system" ('273 Patent, Claims 1, 8, 18, 19)

Dell's proposed construction improperly excludes a standby system that may need to boot (or reboot) before completing the scaling up or down of virtual CPUs. Opp. 30. Dell's arguments reveal overreach.

Dell contrasts the systems discussed in the '273 Patent—notably cold standby systems—with the '273 Patent's disclosure of preparing a standby system to assume the active role with "minimal or no delay." Opp. 28. However, nothing in the specification discloses whether the cold standby system "remains in an operative state while scaling up or down the number of virtual CPUs." Dell compounds this error by arguing that the applicants disparaged the existing art discussed in the '273 Patent. *Id.* at 29. This characterization is incorrect and bears no resemblance

to the disclaimers in Dell's cited caselaw.[12]

None of Dell's citations to the specification compel a different conclusion. For example, Dell's reliance on embodiments in Figures 2 and 3 (Opp. 29–30) fails for at least two reasons: (1) the claims do not use the terms "dynamically" or "Hotadd"[13]; and (2) Figures 2 and 3 and descriptions thereof do not require all embodiments to "remain[] in an operative state while scaling up or down the number of virtual CPUs." Tellingly, none even suggest that the standby system cannot boot up or reboot during virtual CPU scaling. *Id.* at 30. Dell does not explain why such a system fails to qualify as "capable of reducing a processing delay in at least one of scale-up and/or scale-down."[14] *Id.* at 27–28.

Dell's final argument is unpersuasive. *Id.* at 28. Dell's assertion that the "standby system" must remain "in an operative state" for the next claimed step—"allocat[ing] one or more of the process to one or more virtual CPUs added"—does not establish that the standby system must remain in an operative state during these steps. *See, e.g.*, Ex. J at 12:31–40. Dell fails to distinguish Cloud Byte's controlling case law.

---

[12] *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) (finding description of coaxial lumen as "the basic sleeve structure for *all embodiments of the present invention contemplated and disclosed herein*" disclaimed side-by-side lumens); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (describing conical shapes as an "extremely important aspect of the present device" disclaimed non-conical implant shapes).

[13] Contrary to Dell's argument, the '273 Patent at 6:49-57 merely identifies a "Hotadd" feature as an "example" that would not require "stopping the virtual machine (VM)," indicating there are other examples in which such stopping may be permissible. *Cf.* Opp. 28–29.

[14] Even if Dell is correct that all embodiments support its proposed construction, Dell cannot show this constitutes disclaimer. *See, e.g.*, *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("It is . . . not enough [to constitute disclaimer] that the only embodiments, or all of the embodiments, contain a particular limitation."). Further, each of Dell's cited embodiments are "illustrat[ive]." Opp. 30 (citing Ex. J at 14:42–15:50, 15:52–16:49, 16:51–18:47, 18:49–20:53).

| | |
|---|---|
| Dated:  September 26, 2025 | */s/ Yury Kapgan with permission Brian Mack* <br> Yury Kapgan (admitted in EDTX) <br> yurykapgan@quinnemanuel.com <br> Ryan Goldstein (admitted in EDTX) <br> ryangoldstein@quinnemanuel.com <br> **QUINN EMANUEL URQUHART & SULLIVAN, LLP** <br> 865 S. Figueroa St., 10th Floor <br> Los Angeles, California 90017 <br> Telephone: (213) 443-3000 <br> Facsimile: (213) 443-3100 <br><br> Brian Mack (admitted in EDTX) <br> brianmack@quinnemanuel.com <br> **QUINN EMANUEL URQUHART & SULLIVAN, LLP** <br> 50 California Street, 22nd Floor <br> San Francisco, CA 94111 <br> Telephone: (415) 875-6400 <br> Facsimile: (415) 875-6700 <br><br> *Of Counsel:* <br> Claire Abernathy Henry <br> Texas State Bar No. 24053063 <br> Andrea Fair <br> Texas State Bar No. 24078488 <br> **MILLER FAIR HENRY PLLC** <br> 1507 Bill Owens Parkway <br> Longview, TX 75604 <br> Telephone: (903) 757-6400 <br> Fax: (903) 757-2323 <br> claire@millerfairhenry.com <br> andrea@millerfairhenry.com <br><br> *Attorneys for Plaintiff Cloud Byte LLC* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 26, 2025, the foregoing document was served by email on all counsel of record.

/s/ *Yury Kapgan*
Yury Kapgan