**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| CLOUD BYTE LLC, <br><br> Plaintiff, <br><br> v. <br><br> DELL INC., and DELL TECHNOLOGIES, INC. <br><br> Defendants. | No. 2:24-cv-00637-JRG |

## <u>CLOUD BYTE LLC'S MOTION TO EXCEED TRIAL EXHIBIT LIMITS</u>

Defendants Dell Inc. and Dell Technologies, Inc. (collectively, "Dell") are selling or have sold ***over 120 models*** of servers that infringe Cloud Byte's patents. In addition, Dell is asserting seventeen defenses in this case, including that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ should have been marked pursuant to 35 U.S.C. § 287. Because of the large number of live issues in the case, Plaintiff Cloud Byte LLC ("Cloud Byte") moves to increase the number of trial exhibits each side may use at trial by 190. Alternatively, Cloud Byte requests the Court to require Dell to identify a narrowed subset of its asserted defenses to present at trial, including specifically by providing a more limited subset of its identified products it asserts needed to be marked under Section 287. Dell opposes this Motion.

## I.    <u>BACKGROUND</u>

Pursuant to the Court's Standing Order on the Number and Use of Pre-Admitted Exhibits in Civil Cases Assigned to Chief Judge Rodney Gilstrap (the "Standing Order"), the Parties are allotted 75 joint exhibits and 30 party exhibits per side. Standing Order at 1. The Standing Order refers to these restrictions as "limits on the presentation of exhibits at trial." *Id*. However, after

reviewing the number of issues and products that will be presented at trial, and after a good faith effort by the Parties to reduce the scope of the case and their exhibits, Cloud Byte respectfully requests an additional 190 party exhibits per side. This would result in 75 joint exhibits and 220 party exhibits per side total, and an overall number of 515 exhibits for trial.

## II.    LEGAL STANDARD

"District courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties)." *Topalian v. Ehrman*, 954 F.2d 1125, 1139 (5th Cir. 1992), *cert. denied*, 460 U.S. 1042, 103 S. Ct. 1438, 75 L.Ed.2d 46 (1992) (citing *Pierce v. Underwood*, 487 U.S. 552, 108 S. Ct. 2541, 2546-47 & n.1, 101 L.Ed.2d 490 (1988)). "However, discretion has its limits….When the manner of the presentation of information to a jury is judicially restricted to the extent that the information becomes incomprehensible then the essence of the trial itself has been destroyed." *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). Under the patent marking statute, 35 U.S.C. § 287, the alleged infringer has an initial burden of production to identify products it alleges needed to be marked. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). "Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.*

## III.    ARGUMENT

The purpose of the Court's Standing Order is to prevent "overly burden[ing]…the Court and…the party obligated to review the documents for objection" by "provid[ing] for a more realistic and efficient means of resolving disputes regarding exhibits to be pre-admitted in advance of trial." Standing Order at 1. It is not meant to be weaponized to put an opposing party between a rock and a hard place.

The current exhibit allowances do not allow Cloud Byte to sufficiently address each of the remaining issues in this case. Despite the lack of any requirement in the current case schedule, the Parties have already meaningfully narrowed the case by dropping three Asserted Patents, and the parties have agreed to rely on at least some representative accused products for the remaining four Asserted Patents. However, a plethora of trial issues still remain that place an asymmetrical burden on Cloud Byte.

For example, Dell has asserted **at least seventeen defenses** that it intends to present at trial, including marking, prosecution history estoppel, equitable defenses, lack of standing, prior commercial use, and license defenses—none of which it has agreed to drop for trial. Dkt. 126, ¶¶ 121-43. Most egregiously, Dell's marking defense involves about █████████████████ ██████████ for the remaining four Asserted Patents, which Dell has refused to narrow. Mar. 6, 2026 Email from P. Torchia ("I do not see how [Dell] can limit products for which Cloud Byte had a marking obligation. Showing complete compliance is Cloud Byte['s] burden."). Dell's interrogatory responses alone identified **over six hundred documents** related to marking. Exs. B, C. Even if Cloud Byte only identified one document for each product that Dell contends should have been marked for the four Asserted Patents, Cloud Byte would exceed the party exhibit limits set in the Standing Order, and addressing even a fraction of the total number of documents Dell cited would far exceed the entire number of exhibits this Court allows to be pre-admitted. Granting Cloud Byte additional trial exhibits would allow Cloud Byte to introduce user manuals and product specifications for each product that demonstrates how those products operate, which is relevant to determining whether such products practice the Asserted Patents.

Further, despite sufficient justification, Dell has refused to agree to representative software versions for each of the three operating systems for the '273 Patent, meaning that approximately

fourteen software versions will need to be presented at trial for this patent alone. Even if Cloud Byte could rely only on a single document to establish direct infringement for each product—it would like to present many more—Cloud Byte will have used almost half of the number of pre-admitted party exhibits the Court allows under its Standing Order. Further, in many instances, the contours of operation of the accused functionalities must be pieced together from several sources. Cloud Byte will use these additional exhibits to demonstrate how the Accused Products operate, which is critical to establishing infringement of the Asserted Patents. And several more such documents would be necessary to comprehensively discuss Dell's acts of inducement for these products, and to discuss Dell customers' extent of use of the accused functionalities in the amount of depth that Dell claims is required. *See* Dkt. 204 at 13-14.

Finally, for at least the '273 Patent, to the extent that Dell insists on directly comparing the functionality of prior versions of operating systems to accused versions, Cloud Byte needs to demonstrate when new features were added that enabled infringement that did not exist in prior art versions. Cloud Byte should not have to choose between, on the one hand, violating the Court's exhibit limit, or on the other hand, dropping certain exhibits and prejudicing its ability to establish infringement, validity, or that it complied with the marking statute. Several appellate courts have held that procedural limits at trial should be sufficiently flexible to accommodate adjustment if the trial court's initial assessment was too restrictive. *See, e.g.*, *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1171 (7th Cir. 1983) (addressing trial time limits); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 610 (3d Cir. 1995) (same). Here, Cloud Byte seeks additional trial exhibits in view of the unique complexities of this case, as described above.

Attached as **Exhibit A** is Cloud Byte's tentative list of 30 party exhibits permitted under the Standing Order. Due to the large number of infringing server models and defenses still at issue,

each of Cloud Byte's 30 party exhibits is critical for Cloud Byte's infringement, validity, or damages case. Attached as **Exhibit B** is a list of 190 additional proposed trial exhibits Cloud Byte is seeking to add to its party list to more fully establish its infringement case or rebut Dell's pleaded defenses. For example, proposed trial exhibits 31-68 assist in establishing the operation of the Accused Functionalities and to demonstrate Dell's infringement of the Asserted Patents. Proposed exhibits 69-148 demonstrate that the products Dell alleges needed to be marked pursuant to § 287 do not practice the Asserted Patents. Proposed trial exhibits 68 and 149-150 assist in establishing the proper apportionment of the value of the Accused Products attributable to the Asserted Patents. Proposed trial exhibits 151-159 support Cloud Byte's damages calculations. Proposed trial exhibits 160, 182-183, and 188-189 show the technical benefits of the Asserted Patents. Proposed trial exhibits 161-183 demonstrate Dell's encouragement of its customers to use the Accused Functionalities and to support Dell customers' use of the Accused Functionalities. Proposed trial exhibits 184-187 demonstrate that secondary considerations support the non-obviousness of the Asserted Patents. Finally, proposed trial exhibits 189-190 demonstrate the infeasibility of Dell's asserted non-infringing alternatives to, and the validity of, the Asserted Patents. Cloud Byte will be prejudiced without these additional exhibits at trial.

Accordingly, Cloud Byte submits that this increase to the number of party exhibits at trial will not substantively increase the burden on the parties or the Court while allowing the Parties to fully present their claims and defenses. Alternatively, Dell should be forced to identify which defenses it intends to present and if that includes marking, a narrowed set of products that allegedly should have been marked for each of the four remaining Asserted Patents so that the Parties can comply with the Court's exhibit number limits.

## IV. **CONCLUSION**

For the foregoing reasons, Cloud Byte respectfully requests the Court grant the Parties leave to include additional party exhibits on their respective Party Exhibit Lists as described above or order Dell to narrow its defenses, including its marking defense.

██████████████████████

Dated: April 1, 2026

Respectfully submitted,

/s/ Brian Mack
Yury Kapgan (admitted in EDTX)
yurykapgan@quinnemanuel.com
Ryan Goldstein (admitted in EDTX)
ryangoldstein@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Brian Mack (admitted in EDTX)
brianmack@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Of Counsel:*
Claire Abernathy Henry
Texas State Bar No. 24053063
Andrea Fair
Texas State Bar No. 24078488
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Fax: (903) 757-2323
claire@millerfairhenry.com

*Attorneys for Plaintiff Cloud Byte LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 1, 2026 the foregoing document was served via email on all counsel of record.

*/s/ Brian Mack*
Brian Mack

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), the undersigned hereby certifies that on March 9, 2026, counsel for Cloud Byte met and conferred with counsel for Dell regarding this Motion prior to filing, and that Dell opposes the relief sought herein.

*/s/ Brian Mack*
Brian Mack